UNITED STATES of America, Appellee,

v.

Bobby Richard WHITE, Appellant.

No. 72-1114.

United States Court of Appeals, Fourth Circuit.

Argued June 6, 1972.

Decided March 20, 1973.

Roy G. Hall, Jr., Winston-Salem, N. C. (Court-appointed counsel), for appellant.

Bradley J. Cameron, Asst. U. S. Atty. (William L. Osteen, U. S. Atty., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

BOREMAN, Senior Circuit Judge:

Bobby Richard White, tried by the court without a jury, appeals his conviction on an indictment[1] which charged him with making a false report, willfully, maliciously, and with reckless disregard for the safety of human life, concerning an attempt to do an act which would be a crime prohibited by Title 18 U.S.C. § 32, in violation of 18 U.S.C. § 35(b).[2] We affirm.

Shortly after midnight on the 17th of June, 1971, White entered a Piedmont Airlines jet which was parked for the night in the airport in Winston-Salem, North Carolina. He was carrying a cloth handbag. Confronting Captain Leon Fox, the only person aboard, White stated that the bag contained nitroglycerin and sulfuric acid and ordered Fox to fly him to Cuba, stating "If I drop this bag it will blow us to bits. I don't give a damn." Fox made preparations to comply with White's command and the plane was actually refueled to capacity. At trial Fox testified that he was convinced White was serious because of the latter's statement.

Fox advised White that he would need a crew to assist him and White permitted only one other person to come aboard, Warren Tadlock, vice-president of flight operations for Piedmont Airlines, who suspected that the bag contained nothing harmful because he had some information that White had handled the bag carelessly earlier in the evening. Tadlock was ordered to crawl forward on his hands and knees along the aisle to the co-pilot's seat and, while he was doing so, White held the bag on his back. Tadlock seized the bag from White's grasp when the latter's attention was diverted by the unexpected arrival of a federal sky-marshal who then subdued White. The bag was subsequently found to contain nothing but personal effects.

White was sentenced to a five-year term of imprisonment but after a period of observation and study pursuant to 18 U.S.C. § 4208(b), he was resentenced to a term of four years.

On appeal, White presents two issues: (1) the indictment is fatally defective for failing to allege all the essential elements of the crime in that it fails to allege specifically the intent required to constitute a violation of § 32, and also in that it fails to cite the particular clause or paragraph of 18 U.S.C. § 32 claimed to have been violated by his alleged acts and conduct; (2) no crime has been committed because § 32 requires an in-

---

1. The charging part of the indictment is as follows:

   On or about June 18, 1971, in the County of Forsyth, in the Middle District of North Carolina, BOBBY RICHARD WHITE, while aboard a Piedmont Airlines aircraft, Flight number 25, an aircraft which was being used for and employed in interstate commerce, wilfully and maliciously and with reckless disregard for the safety of human life, imparted and conveyed the false information that he then and there had a bag containing nitroglycerin and sulfuric acid with which he could destroy the aircraft, which information BOBBY RICHARD WHITE knew to be false and which concerned an attempt to do

   an act which would be a crime prohibited by Title 18, United States Code, Section 32; in violation of Title 18, United States Code, Section 35(b).

2. 18 U.S.C. § 35(b) in pertinent part:

   (b) Whoever willfully and maliciously, or with reckless disregard for the safety of human life, imparts or conveys or causes to be imparted or conveyed false information, knowing the information to be false, concerning an attempt or alleged attempt being made or to be made, to do any act which would be a crime prohibited by this chapter . . . shall be fined not more than $5,000, or imprisoned not more than five years, or both.

tent to damage or destroy an aircraft and his threats were always conditional.

In support of its argument that the indictment is not defective, the prosecution relies on United States v. Chunn, 347 F.2d 717, 720 (4 Cir. 1965):

> " 'It is enough to sustain an indictment that the offense be described with sufficient clearness to show a violation of law, and to enable the accused to know the nature and cause of the accusation and to plead the judgment, if one be rendered, in bar of further prosecution for the same offense. . . .' "

Even prior to *Chunn* this court had approved the concept and practice of liberalized criminal pleadings so long as the indictment contains a concise and definite statement of the essential facts constituting the offense charged. Finn v. United States, 256 F.2d 304, 306 (4 Cir. 1958). *See also* Hagner v. United States, 285 U.S. 427, 431–433, 52 S.Ct. 417, 76 L.Ed. 861 (1932), and Rule 7(c) F.R.Crim.P.

Title 18 U.S.C. § 35(b) requires the combination of three elements to constitute a crime: (1) willfully and maliciously, or with reckless disregard for the safety of human life, imparting false information, (2) knowing such information to be false, (3) concerning an attempt being made or to be made to do an act which would be a violation of chapter 2 of Title 18 U.S.C. (*i.e.*, here 18 U.S.C. § 32).

It is important to bear in mind that the substantive offense of which White stands convicted is the violation of § 35 (b) pertaining to the giving of false information and that White is not charged with a substantive violation of any of the provisions of 18 U.S.C. § 32. Therefore, with this caveat, we look to 18 U.S.C. § 32 [3] to determine the essential elements of a crime thereunder.

3. § 32. Destruction of aircraft or aircraft facilities

> Whoever willfully sets fire to, damages, destroys, disables, or wrecks any civil aircraft used, operated, or employed in interstate, overseas, or foreign air commerce; or
>
> Whoever willfully sets fire to, damages, destroys, disables, or wrecks any aircraft engine, propeller, appliance, or spare part with intent to damage, destroy, disable, or wreck any such aircraft; or
>
> Whoever, with like intent, willfully places or causes to be placed any destructive substance in, upon, or in proximity to any such aircraft, or any aircraft engine, propeller, appliance, spare part, fuel, lubricant, hydraulic fluid, or other material used or intended to be used in connection with the operation of any such aircraft, or any cargo carried or intended to be carried on any such aircraft, or otherwise makes or causes to be made any such aircraft, aircraft engine, propeller, appliance, spare part, fuel, lubricant, hydraulic fluid, or other material unworkable or unusable or hazardous to work or use; or
>
> Whoever, with like intent, willfully sets fire to, damages, destroys, disables, or wrecks, or places or causes to be placed any destructive substance in, upon, or in proximity to any shop, supply, structure, station, depot, terminal, hangar, ramp, landing area, air-navigation facility or other facility, warehouse, property, machine, or aparatus used or intended to be used in connection with the operation, loading, or unloading of any such aircraft or making any such aircraft ready for flight, or otherwise makes or causes to be made any such shop, supply, structure, station, depot, terminal, hangar, ramp, landing area, air-navigation facility or other facility, warehouse, property, machine, or apparatus unworkable or unusable or hazardous to work or use; or
>
> Whoever, with like intent, willfully incapacitates any member of the crew of any such aircraft; or
>
> Whoever willfully attempts to do any of the aforesaid acts or things—
>
> shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
>
> Note: "Destructive substance" mentioned in the third paragraph of § 32 above is defined in 18 U.S.C. § 31 as follows:
>
> "Destructive substance" means any explosive substance, flammable material, infernal machine, or other chemical, mechanical, or radio-active device or matter of a combustible, contaminative, corrosive, or explosive nature; . . .

The first paragraph of § 32 (see footnote 3) makes it a crime to willfully damage or destroy a civil aircraft used or employed in interstate commerce; the paragraph contains no reference to the means employed to accomplish the damage or destruction.

The second paragraph of § 32 makes it a crime to willfully do certain acts with respect to an engine, propeller, appliance, or spare part of such aircraft, *with intent to damage or destroy such aircraft.*

The third paragraph of § 32 makes it a crime to willfully place any destructive substance in or upon any such aircraft "with like intent."

Thus, it clearly appears that the second and third paragraphs which refer to "such aircraft" must be read and considered in connection with the first paragraph which pertains to a civil aircraft used or employed in interstate commerce. The second paragraph provides that the proscribed acts must be done with the intent to damage or destroy the aircraft. Obviously, the phrase in the third paragraph—"with like intent"— must be construed to mean the intent to damage or destroy such aircraft.

■ As we construe the remaining paragraphs of § 32 they can have no possible relevance in the instant case. White complains that the indictment should have specified a particular paragraph of § 32 rather than the entire sec-

tion. However, an examination of the record discloses beyond doubt or question that counsel for White was fully aware of the nature of the charges at all times. From the discussion and argument before the court by defense counsel and counsel for the prosecution, it is clear that the case was tried upon the theory and with the understanding that the indictment was intended to charge defendant with knowingly giving false information concerning an attempt to do an act which would be a crime prohibited by the *third paragraph* of § 32, *i. e.*, placing a destructive substance aboard the aircraft. This understanding on the part of the defendant and his counsel is further evidenced by their contention that the charge in the indictment that the defendant gave false information with respect to the placing of a destructive substance aboard the aircraft was insufficient to charge a violation of § 35(b) unless accompanied by an allegation that the information given disclosed the intent to damage or destroy the aircraft, such intent being an essential element of the crime prohibited by § 32.

It is interesting to look to 18 U.S.C. § 35 as first enacted,[4] to take note of the subsequent changes therein from its original form,[5] and to examine the very few cases decided thereunder.

In Smith v. United States, 283 F.2d 16 (6 Cir. 1960), the defendant was convicted of conveying to a federal agency

4. Section 35 was first enacted as a misdemeanor statute by Act of July 14, 1956, 70 Stat. 540, in the following form:

§ 35. Imparting or conveying false information

Whoever willfully imparts or conveys or causes to be imparted or conveyed false information, knowing the information to be false, concerning an attempt or alleged attempt being made or to be made, to do any act which would be a crime prohibited by this chapter or chapter 97 or chapter 111 of this title— shall be fined not more than $1,000, or imprisoned not more than one year, or both.

5. By Act of October 3, 1961, 75 Stat. 751, the statute was amended by the deletion of

the word "willfully" from the original version, was re-enacted with no other changes and designated as § 35(a). The same Act of October 3, 1961, also created § 35(b), the section involved in the instant case and reproduced in footnote 2, *supra.* It will be observed that § 35(b) contains the words "willfully and maliciously, or with reckless disregard for the safety of human life," and that a violation of this section is made a felony. By Act of July 7, 1965, 79 Stat. 210, Congress further amended § 35(a) to substitute a civil penalty of not to exceed $1,000 in place of the fine and imprisonment provisions of the 1961 misdemeanor version but this amendment has no relation to the question now before the court.

in charge of an airport control tower, by telephone, false information that a bomb was on an outgoing civil aircraft. While the question presented in the instant case was not there involved, our attention is attracted to the wording of the one-count indictment drawn under § 35 in its original form, as follows:

"Robert James Smith did willfully impart and convey and cause to be imparted and conveyed, false information, knowing the same to be false, concerning an attempt and alleged attempt being made and to be made to willfully place and cause to be placed a destructive substance, to wit: a bomb, in, upon and in proximity to a civil aircraft used, operated and employed in interstate commerce *with intent to damage, destroy, disable and wreck such aircraft,* a crime prohibited by section 32, Title 18, United States Code, a part of Chapter II, Title 18, United States Code, . . . ." (Emphasis added.)

In support of his contention that the indictment in the case before us is fatally defective for failure to charge the false communication of the essential element of intent to damage or destroy the aircraft, as provided in § 32, White relies upon Carlson v. United States, 296 F.2d 909 (9 Cir. 1961). In that case an information was drawn under § 35, the misdemeanor statute in the form as originally enacted, and charged that the defendant

". . . did wilfully impart and convey to Gayle Zimmer, a stewardess, false information concerning an alleged attempt being made to wilfully place a destructive substance, to wit: explosives, upon American Airlines Flight number 8, a civil aircraft used, operated and employed in interstate commerce, well knowing such information to be false." (296 F.2d at 910)

The court concluded that in order to determine the elements of the offense sought to be charged it was necessary to examine 18 U.S.C. §§ 32 and 35. Upon such analytical examination the information was held to be fatally defective. At 296 F.2d p. 911 the court stated:

"The act concerning which false information was given, as alleged in the information (the wilful placing of explosives upon an aircraft) finds its counterpart only in the third paragraph of section 32, quoted above. But, under that paragraph of section 32, the wilful act there described is not a crime unless done 'with like intent,' namely, the intent stated in the second paragraph of section 32, 'to damage, destroy, disable, or wreck any such aircraft; . . . .'

"This indispensable intent factor of the second element of the crime described in section 35 is wholly missing from the language of the information. Stated differently, the alleged false information was not (as required in order to constitute an offense) that explosives had been wilfully placed on an aircraft *with intent to damage the aircraft,* but was only that explosives had been wilfully placed on an aircraft."

The court went on to note that the only false reports which are forbidden by § 35 are those concerning an act which would be a crime prohibited by "this chapter" and pointed with approval to the form of the indictment in Smith v. United States, *supra,* observing that the *Smith* indictment evidenced the same construction of the statute as the *Carlson* court placed upon it.

The next reported case involving a prosecution under 18 U.S.C. § 35 in its original form is United States v. Allen, 317 F.2d 777 (2 Cir. 1963). There the defendant and a friend, Roth, were at the ticket counter of an airline in Connecticut and Roth was intending to fly to Chicago. Roth had two bags, one large and one small. An attendant took the large bag a short distance down the counter for weighing, asking whether Roth was to carry the small bag. The defendant handed Roth the small bag,

asking "Is that the bag with the bomb in it?" The attendant, then about six feet away, looked toward the defendant who said to Roth, "I don't think he likes me." The bags were searched but revealed no bomb and Roth took the plane to Chicago. In *Allen* the form of the information was not set forth but was referred to in the introductory paragraph of the opinion (p. 777) as a "one-count information charging wilful conveying of false information, known to be false, concerning an alleged attempt to damage a civil aircraft, in violation of 18 U.S.C. § 35 (the bomb hoax or false tip statute), a misdemeanor, . . ." The court in *Allen* expressly rejected the decision of the Ninth Circuit in *Carlson, supra,* and stated as the basis for its holding:

> "The legislative history is persuasive that specific evil intent was not required, for the House Report No. 1979, 84th Congress, 2nd Session, on the bill which became this Act contains this language: 'The committee has amended the bill to make it clear that the legislation is intended to cover fictitious reports, as well as false reports that attempts are being made or contemplated. It is obvious that such false alarms can seriously disrupt air-carrier service, whether such reports are the work of pranksters or of subversive or other malicious elements.' 2 U.S.Code Congressional and Administrative News, 84th Congress, 2nd Session, 1956, p. 3146. This language surely expresses the intent to cover words spoken in jest as well as those uttered with the specific purpose to harm the carrier by interruption of traffic." (317 F.2d at 778.)

The committee report to which reference is made in the foregoing quotation from *Allen* pertained to proposed changes in and amendments to the form of the *bill* as originally introduced into the Congress which bill, as amended by committee, was enacted into law as 18 U.S.C. § 35. The intent with which the Congressional Report was concerned was the purpose of the perpetrator of the hoax in making his false report. The language of the report has no application to the issue in the present case since we are here concerned with the intended use of a destructive substance *only as falsely communicated* to the airline official. Although the information in *Allen* was drawn under § 35 as originally enacted, the word "willfully" had been removed by the amendment of 1961 at the time the *Allen* court handed down its decision. In that connection the court observed:

> "The amendment to this Act by the 1st session of the 87th Congress in 1961 removing 'wilfully' from the misdemeanor section is no indication that practical jokers were not intended to be covered by the earlier Act, for the Act as amended still makes conveying of the false information without malice a misdemeanor, while it adds a felony provision when done wilfully *and* maliciously or with a reckless disregard for human life. Allen's statement, even if meant for a jest, would today fall within the misdemeanor section, as we hold it did under section 35 before the amendment." [6]

The conviction of Allen was affirmed.

---

6. The 1961 amendments were requested by the Justice Department in an Executive Communication from the Attorney General of the United States to the Speaker of the House of Representatives and reasons for the request were assigned:

> Our efforts to curb the high incidence of false bomb reports necessarily have included the prosecution of people who claimed they had no intention to create any apprehension or disturbance but were merely playing a practical joke.

> In prosecuting such individuals, we have taken the position that the word 'willfully,' as used in section 35, does not necessarily embrace any evil purpose but comprehends merely a voluntary and conscious imparting or conveying of the false information *with which the statute deals.* However, the courts have not uniformly adopted our position. Adding to the judicial confusion over the applicability of the statute in prankster cases is the disinclination on the part of

■ In United States v. Sullivan, 329 F.2d 755 (2 Cir. 1964), cert. denied, 377 U.S. 1005, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964), the defendant was tried and convicted of a misdemeanor by a jury upon an information drawn under 18 U.S.C. § 35(a). The substance of the charge was that the defendant, while aboard a certain aircraft which was being used for and employed in interstate air commerce, imparted and conveyed the false information that he then and there had "a power T.N.T. bomb aboard in his luggage, which information concerned an attempt to do an act which would be a crime prohibited by Title 18 United States Code, section 32, the said defendant . . . knowing the information to be false. (Title 18 United States Code, section 35(a))." The identical issue presented in *Allen, supra*, was before the court in *Sullivan* and at page 756 the court stated:

"To be sufficient, the information need not allege specifically a threat to destroy the plane, nor is there any required allegation of malice or evil purpose. These points were clearly decided by this court in United States v. Allen, . . . . We found support for this result in the legislative history of the act. The Committee on the Judiciary of the House of Representa-

tives, in reporting the 1961 amendment to 18 U.S.C. § 35, had this to say about the subsection here involved:

'Subsection (a) would make it a misdemeanor for anyone to impart or convey information about a false bomb or bomb hoax, knowing the same to be false, even though such an act was done without malice. 2 U.S.Code Congressional and Administrative News, 87th Congress, First Session, 1961, p. 3053.' "

We are unable to find support in the quoted Congressional Report for the position taken by the court. The phrase "even though such an act was done without malice" can only be construed to apply to the purpose behind the act of the perpetrator of the hoax. The phrase cannot logically be construed to mean that the requirement of § 32 of "intent to damage or destroy" in placing the bomb on board an aircraft, were it true, is not an essential element. Such a construction would fly in the face of the unambiguous language of the statute that the false report must concern "an attempt or alleged attempt being made or to be made, to do any act which would be a crime prohibited by this chapter." We look to the unambiguous words of the criminal statute to deter-

jurors to accept our position, resulting in undue acquittals in such cases. [Emphasis added.]

To clarify the statute, and to render it more effective, I submit to the Congress a bill which would make it a felony for one to convey a false report willfully and maliciously, or with reckless disregard for the safety of human life, and a misdemeanor to do so with knowledge of its false character even though without malice or reckless disregard for human life. Such a statute would clearly show the congressional intention to make it a criminal offense to give false reports even without an evil or reckless motive and would provide a more adequate penalty for those whose actions warrant it. (1961 U.S. Code Cong. & Admin.News, p. 3053)

The proposal of the Attorney General as to amendments was adopted in the Senate Report accompanying the bill to amend original § 35.

Sen.Rep. No. 1055, 87th Cong., 1st Sess., 1961; 1961 U.S.Code Cong. & Admin.News, p. 3053:

The committee believes that the proposed legislation, as recommended by the Attorney General and as approved by the House of Representatives, is meritorious and recommends it favorably.

It is apparent from the foregoing quotations that the purpose of the amendments was to "reshape" the statute to eliminate the confusion which had arisen in connection with attempts to prosecute pranksters for misdemeanors under § 35 as originally enacted. However, the addition of § 35(b) was designed to make it a felony to voluntarily and consciously impart or convey false information with an "evil purpose," *i. e.*, willfully and maliciously, or with reckless disregard for the safety of human life.

mine its meaning and not to the purported intentions of a congressional committee.[7]

Another case from the Second Circuit, United States v. Rutherford, 332 F.2d 444 (2 Cir. 1964), cert. denied, 377 U.S. 994, 84 S.Ct. 1922, 12 L.Ed.2d 1046 (1964), involved an information drawn under 18 U.S.C. § 35(a) and the court merely stated its reliance upon its earlier decision in United States v. Allen, 317 F.2d 777, without further discussion.

The Government contends that the Second Circuit cases, namely, *Allen, Sullivan* and *Rutherford, supra,* are apposite here. Our research has failed to disclose any reported case involving a prosecution under 18 U.S.C. § 35(b), the felony section. The cases hereinbefore cited and discussed from the Sixth, Ninth and Second Circuits involve misdemeanor charges under either § 35 as originally enacted or as amended and re-enacted in 1961 as § 35(a). We do not accept any of those decisions as persuasive authority in our search for the correct answer to the question presented here; we are constrained to observe only that they reflect the law of the respective circuits from whence they came in misdemeanor prosecutions.

■ To constitute a substantive violation of the third paragraph of 18 U.S. C. § 32 more is required than merely placing a destructive substance aboard an aircraft; such act must be accompanied by an intent, at least, to damage the aircraft. We reach the conclusion that by incorporation of the reference to § 32 in the indictment there is no charge of a violation of § 35(b) unless the false information concerning the placing of a destructive substance on board the aircraft includes, expressly or by implication, information concerning an intent to damage or destroy the plane. However, the statement of this conclusion does not dispose of this appeal.

■■ The indictment in the instant case (see footnote 1) specifically alleges that White falsely reported that he had a bag containing a destructive substance "with which he could destroy the aircraft." White argues that the words of the indictment must follow the language of the statute and that the use of the word "could" is insufficient to charge the intent to damage or destroy the aircraft since it is conditional or ambiguous. We disagree. It is not a requirement of the Federal Rules of Criminal Procedure that an indictment follow the exact language of the statute although in many, if not most, instances that would appear to be the better practice. It is sufficient if the indictment sets forth the essential facts constituting the crime charged with words of "similar import." Hall v. United States, 410 F. 2d 653, 659 (4 Cir. 1969), cert. denied, 396 U.S. 970, 90 S.Ct. 455, 24 L.Ed.2d 436 (1969); United States v. Chunn, 347 F.2d 717, 719 (4 Cir. 1965); United States v. Martell, 335 F.2d 764, 765 (4 Cir. 1964); Finn v. United States, 256 F.2d 304, 306 (4 Cir. 1958). *Accord,* Hockenberry v. United States, 422 F.2d 171, 173–174 (9 Cir. 1970). United States v. Zarra, 298 F.Supp. 1074, 1077–1078 (M.D.Pa.1969), aff'd, 423 F.2d 1227 (3 Cir. 1970), cert. denied, 400 U.S. 826, 91 S.Ct. 52, 27 L.Ed.2d 56 (1970).

The words "with which he could destroy the aircraft" carry with them the unmistakable implication of a communication of the intent which is an essential element of a substantive violation of the third paragraph of § 32. Consideration of the indictment as a whole leads us to conclude that all essential elements of the crime are sufficiently set forth therein.

White's final challenge is to the sufficiency of the proof to sustain the conviction. He contends that there would have been no substantive violation of § 32 even had he actually been in possession of a destructive substance since he did not have or indicate the intent to damage or destroy the aircraft and even stated that

7. *See* Carlson v. United States, 296 F.2d 909, 911 (9 Cir. 1961).

he did not wish to do so unless forced to it.

White erroneously characterizes his actions, statements and conduct as expressions of a desire to destroy the plane but accompanied by a statement that he would not do so.[8] However, from the events which were developed by the evidence White's threats were of certain, imminent harm to the aircraft unless an alternative should be provided by compliance with his demand that he be flown to Cuba.[9] The law of criminal assault is filled with examples of such qualified threats which have served as the bases of convictions.[10]

For the reasons herein stated the conviction is affirmed.

Affirmed.

---

8. Appellant states in his brief that his threats were to be equated with the common-law example: "If it were not assize time, I would not take such language from you," which did not constitute an assault.

9. Among the threats uttered by White to Captain Fox was the following: "Well, I don't want to take any children's father with me, but unless we get going, I am going to drop this and blow us up."

10. Compare White's statement in note 9, *supra*, with the threat "Turn around, or I will blow your head off," which threat constitutes an assault. 6 Am.Jur.2d § 30, p. 32.