**UNITED STATES of America, Plaintiff,**

v.

**Marlyn KILROY, Defendant.**

**No. 81–CR–54.**

United States District Court,
E. D. Wisconsin.

Sept. 17, 1981.

Joseph P. Stadtmueller, U. S. Atty., Elizabeth L. Adelman, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

Stephen E. Kravit, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

Marlyn Kilroy was charged in an eleven count indictment issued April 14, 1981, with three counts of mail fraud in violation of 18 U.S.C. § 1341 (counts 1, 2, and 3), one count of wire fraud in violation of 18 U.S.C. § 1343 (count 4), six counts of interstate transportation of a stolen security in violation of 18 U.S.C. § 2314 (counts 5, 6, 7, 8, 9, and 10), and one count of making a materially false statement in a loan application in violation of 18 U.S.C. § 1014 (count 11).

Counts 1 through 4 of the indictment also charge that Kilroy devised a scheme to defraud Amoco Oil Co. and to obtain money from it, and that the scheme was in substance as follows: from July 1976 through December 1979, Kilroy was the manager of the Sharon, Wisconsin Fertilizer Plant for Amoco Oil Co., a division of Standard Oil. During that time he devised and put into effect a scheme to divert payments made to Amoco to his own use, by means of having customers write personal checks to him and also of converting checks written to Standard Oil to his own use, and then mailing an adjustment memo to Amoco Oil Co., falsely reflecting a product return by the customer. He also failed to mail scale tickets, which were tickets used to write up sales, to Amoco for sales in which he diverted payments, and then induced other customers to prepay on sales and mailed false scale tickets to Amoco reflecting sales in the amount of the prepayments so that Amoco would reduce its accounting of inventory.

The case is currently before the Court on the defendant's motions to dismiss the indictment; to sever count 11; and for discovery of (a) all grand jury transcripts, (b) all checks, adjustment memos, scale tickets, bank documents and other documents on which the counts are based, (c) all exculpatory evidence including contradictory statements, (d) handwritten notes of F.B.I. agents from interviews of all Government witnesses listed in the Government's pretrial report, and (e) all witnesses and documents which the Government proposes to call or introduce at trial as evidence of similar acts committed by the defendant, pursuant to Rule 404(b) of the Federal Rules of Evidence.* For the following rea-

---

\* The defendant has also moved in limine to exclude evidence of any other crimes, acts, or wrongs evidence, and to exclude the use of summary charts and summary evidence at trial, and he has moved for the appointment of Mr. George Kienzler, the former Chief of the Intelligence Division of the Internal Revenue Service in Milwaukee, as an investigator and possible expert, to be compensated at the rate of $7.50 per hour. Those motions are not yet fully briefed.

sons, the motion to dismiss will be denied as to counts 1 through 4 and granted as to counts 5 through 11; the motion to sever will be dismissed as moot; and the motion for discovery will be granted in part and denied in part.

The Government has moved for discovery and inspection of any books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession or control of the defendant and which he intends to use at trial, and any results or report of physical or mental examinations and of scientific tests or experiments made in connection with this case which are within the defendant's possession or control and which he intends to use at trial or which were prepared by witnesses whom he intends to call at trial. The Government's motion will be granted.

*The defendant's motion to dismiss*

██ In considering the sufficiency of an indictment under Rule 7(c)(1) of the Federal Rules of Criminal Procedure, "[a]llegations made in one count may be incorporated by reference in other counts. However, each count is considered as if it were a separate indictment and must be sufficient without reference to other counts unless they are expressly incorporated by reference. * * *." 1 Wright *Federal Practice and Procedure* § 123 at 222; *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932); *United States v. Gordon*, 253 F.2d 177, 180 (7th Cir. 1958). The Court may order a separate trial of any or all counts, Rule 14 of the Federal Rules of Criminal Procedure; the jury must consider the evidence separately as to each count and reach a separate verdict as to each, 2 Devitt and Blackmar *Federal Jury Practice and Instructions* § 11.07 (3d ed. 1977), and cases cited therein; and the Court as a matter of law must decide if the evidence is sufficient to support a guilty verdict on every count independently, Rule 20 of the Federal Rules of Criminal Procedure. Consequently, in considering a motion to dismiss each count of a multi-count indictment for failure to adequately allege

a criminal offense, the Court must direct its attention to the language of each count separately, including only matters from other counts expressly incorporated by reference into the count under consideration. *United States v. Garrison*, 280 F.2d 493 (7th Cir. 1960).

Counts 1 through 4. The defendant challenges counts 1 through 4 of the indictment on the ground that the scheme which he allegedly devised to defraud Amoco Oil Co. is described to be "in substance" as set forth in paragraphs 6 and 7 of count 1 of the indictment, and as incorporated by reference in counts 2, 3, and 4, and also that paragraphs 6 and 7 of count 1 describe two different schemes, creating the risk that the jury will not arrive at a unanimous verdict if some jurors believe that he committed one scheme and some that he committed the other. Paragraph 6 describes a course of conduct wherein the defendant allegedly had customers write personal checks to him and converted checks written to Standard Oil to his own use, and then mailed an adjustment memo to Amoco Oil falsely reflecting a product return. Paragraph 7 describes a course of conduct wherein the defendant allegedly failed to mail scale tickets, reflecting sales, to Amoco for sales in which he diverted payments, and then induced other customers to prepay on sales and mailed false scale tickets to Amoco reflecting sales in the amount of the prepayments so that Amoco would reduce its inventory accounting.

Defendant argues that because counts 1 through 4 of the indictment allege that his scheme was "in substance" as described, the counts are defective under Rule 7(c)(1) of the Federal Rules of Criminal Procedure, which requires that the indictment contain a definite written statement of the facts constituting the offense charged. See, e. g., *United States v. Williams*, 203 F.2d 572, 574 (5th Cir. 1953), condemning "[i]ndirect expressions, implied allegations, argumentative statements, and uncertainty due to generalizations in language" contained in an indictment.

■ The purpose of the definiteness requirement is to apprise the defendant of the charges against him to enable him to prepare a defense and to enable him to plead any judgment as a bar to future prosecution for the same offense. *United States v. Pope*, 189 F.Supp. 12, 17 (S.D.N.Y. 1960); *United States v. Haldeman*, 559 F.2d 31, 126 (D.C. Cir. 1976). As in a conspiracy charge, where the Government need not set forth all of the overt acts allegedly committed in furtherance of the conspiracy, where a scheme to defraud is charged the indictment need not set forth all of the overt acts committed in furtherance of the scheme. *United States v. DePalma*, 461 F.Supp. 778, 798 (S.D.N.Y.1978) (scheme to defraud creditors in a bankruptcy proceeding). See also *United States v. Haldeman*, supra, at 126 (charge of obstruction of justice); *United States v. Mayo*, 230 F.Supp. 85 (S.D.N.Y. 1964) (words "among others" not stricken where they were included in the means paragraph of the indictment describing the proof to be offered at trial, as opposed to the paragraph setting forth the gravamen of the charge). Indeed, as the Court in *Haldeman* pointed out, inclusive language included in the means paragraph of an indictment broadens the scope of the acts to which jeopardy attaches and thus provides the defendant with expanded protection. 559 F.2d at 126.

■ The defendant complains that the language "in substance" may mean that the grand jurors who voted for his indictment may not have agreed on the nature of the scheme to defraud which the defendant alleged engaged in or that they may have voted the indictment on the basis of some scheme other than what is alleged. Where a scheme is described as being "in substance" composed of elements (a)–(e), however, the meaning of the phrase "in substance" is that elements (a)–(e) constitute the essence of the scheme, not that the essence may differ in material respects from what is alleged. See the *American College Dictionary*, definition of "substance"; Webster's *New World Dictionary of the American Language*, definition of "substance." Unlike an accusation that a defendant acted in a certain way "among others" or acted through "various illegal and unlawful means" or did certain illegal acts "among others," see, e. g., *United States v. Mayo*, supra; *United States v. Hubbard*, 474 F.Supp. 64, 80–81 (D.C.D.C. 1979); *United States v. Pope*, 189 F.Supp. 12, 25–26 (S.D.N.Y.1960), an accusation that a defendant acted "in substance" in a described way is specific with regard to the essential elements of the conduct of which the defendant is accused.

■ In an appropriate case the defendant may seek explication of inclusive language contained in the means section of a charge or the section of a conspiracy charge describing overt acts through a motion for a bill of particulars. *United States v. Hubbard*, supra, at 80–81. The defendant suggests that if counts 1 through 4 are not dismissed, the Government be ordered to provide him with a bill of particulars. The function of a bill of particulars is to enable the defendant to prepare an adequate defense, and a bill is not required if the indictment itself includes sufficient detail or if the Government has provided the information called for in some other manner. 1 Wright *Federal Practice and Procedure* § 129. Each of counts 1 through 4 apprised the defendant of the specific time and place of his alleged misuse of the mails or wire communications; the Government has also opened its files to the defendant; and, finally, in light of the disposition of the defendant discovery motion which is made below, I am not persuaded that a bill of particulars is required in this case.

The defendant also argues that paragraphs 6 and 7 of the indictment, which have previously been described, are duplicitous and describe two separate fraud schemes and consequently the jury may convict the defendant without unanimity as to which scheme he engaged in. He suggests that the Government be required to elect which fraud theory it is pursuing in each count or that the jury be given a special verdict on counts 1 through 4 requiring unanimity as to the fraud theory.

■ Paragraph 6 of the indictment alleges that the defendant's conversion of payments made to Standard Oil "was a part of the scheme and artifice to defraud." Paragraph 7 alleges that his concealment of the conversions "was further a part of the scheme and artifice to defraud." Those paragraphs give the defendant sufficient notice of the various means which he is accused of using to effectuate the mail and wire fraud scheme, and any danger of a compromise verdict can be guarded against through the use of appropriate instructions to the jury. *United States v. Bush*, 522 F.2d 641, 649 (7th Cir. 1975); *United States v. Zeidman*, 540 F.2d 314, 317–318 (7th Cir. 1976).

■ Counts 5 through 10. Counts 5 through 10 of the indictment each allege that the defendant caused to be transported in interstate commerce "a known stolen security", in violation of 18 U.S.C. § 2314. That statute provides in part:

"Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, *knowing the same to have been stolen, converted or taken by fraud*; * * *

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

The defendant argues that through its use of the word "known" in counts 5 through 10, the Government has depersonalized the knowledge requirement in 18 U.S.C. § 2314 and thus the counts fail to contain an essential element of the crimes charged, that is, that the *defendant* knew that the securities were stolen at the time he caused them to be transported in interstate commerce. I agree because, as previously stated, each count in the indictment must stand by itself so that the jury may consider each count separately and in this case counts 5 through 10, read independently, do not allege that the defendant at the relevant times knew the securities were stolen.

In *United States v. Wabaunsee*, 528 F.2d 1 (7th Cir. 1975), the Court invalidated a conviction obtained under 18 U.S.C. § 2314

on the ground that the indictment failed to allege the defendant's knowledge that the items transported had been stolen. The indictment in that case read as follows:

"Between on or about October 21, 1973 and on or about October 28, 1973, defendants did transport in interstate commerce from Tulsa, Oklahoma to Peoria, Illinois, stolen goods, wares and merchandise, * * in violation of the first paragraph of Sections 2314 and 2 of Title 18, United States Code."

Had the items in that case been described in the indictment as "known stolen goods, wares and merchandise," the addition of the word "known" still would not have supplied the requirement that the defendant be the one who knew of their stolen character. By using the word "known" in this case, the Government has indicated that at the time the defendant caused the securities to be transported it was known to someone, be it the owner, the maker, the defendant, or anyone else, that the securities were stolen. Counts 5 through 10 do not incorporate by reference the language of count 1, setting forth the defendant's scheme to defraud, cf. *United States v. Richman*, 369 F.2d 465 (7th Cir. 1966), nor are there words of similar import in the counts which supply the missing element of defendant's knowledge, cf., *United States v. White*, 475 F.2d 1228 (4th Cir. 1973). Both *Richman* and *White* were distinguished by the Court in *Wabaunsee*, and this case is akin to *Wabaunsee* and not to *Richman* or *White*.

■ Count 11. Count 11 alleges that in April 1979, the defendant, in violation of 18 U.S.C. § 1014:

" * * * made a materially false statement in a loan application submitted by MARLYN KILROY to the Walworth State Bank, a bank insured by the Federal Deposit Insurance Company for the purpose of influencing the bank to approve the loan in that MARLYN KILROY stated that the loan was to purchase fertilizer to sell to customers when in truth and in fact as MARLYN KILROY

well knew, the loan was to pay for fertilizer purchased in 1978. * * * "

Section 1014 provides that:

"Whoever knowingly makes any false statement * * * for the purpose of influencing in any way the action of * * * any bank the deposits of which are insured by the Federal Deposit Insurance Corporation, * * * shall be fined not more than $5,000 or imprisoned not more than two years, or both."

Once again the defendant alleges that the element of his knowledge is insufficiently alleged in the indictment.

In count 11, however, as opposed to counts 5 through 10, the allegation is made that "as [the defendant] well knew," the reason which he set forth in his loan application for wanting the loan was false and in fact he sought the loan for a different purpose. Thus, as in *United States v. White,* supra, this is a case where words of similar import to the statutory elements of the crime charged are set forth in the language of the indictment.

The defendant also argues that an intention "to purchase fertilizer to sell" is not literally inconsistent with an intention "to pay for fertilizer purchased" and therefore the indictment does not adequately allege a false statement by the defendant.

The parties in their briefs have engaged in an elaborate discussion of the content of the word "purchase." According to Black's *Dictionary,* a purchase includes the elements of transfer of property and of payment of a valuable consideration for property. The Government contends that the language of count 11 creates a juxtaposition between purchasing property, meaning acquiring and paying for property intended for future sales, which is what the defendant stated as his intention in applying for the loan, and having purchased but not paid for property prior to the time of the loan application, meaning having acquired the property before then but not paid for it, which is what the defendant's alleged real intention was in applying for a loan. The defendant argues that his stated reason for wanting the loan, i. e., to purchase fertilizer

is not inconsistent with his real reason for the loan, i.e., to pay for fertilizer purchased earlier, since fertilizer "procured" earlier than the time of the loan application is not "purchased" until it is paid for.

There is a logical inconsistency in the language of count 11. Since "purchase" includes both acquisition and payment, a person cannot technically seek a loan to pay for property previously purchased, as the Government charges the defendant with having done.

More importantly, Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that the indictment be "a plain, concise and definite written statement of the essential facts constituting the offense charged." Count 11 charges the defendant with making a false statement to obtain a loan. It does not incorporate by reference the scheme described in count 1 and therefore it must stand or fall on its own. In common parlance, a person frequently purchases property without simultaneously paying for it. Someone may "purchase" a car, for instance, and take title and possession without having paid for the car, and subsequently seek a loan to pay off the purchase price. On the other hand, a person may also acquire property on credit without taking title and thereafter purchase the property already in his possession by paying for it, as is commonly done through the use of credit cards.

An individual should not be required to answer a criminal charge which is based upon a linguistic technicality. Reading count 11 with or without a dictionary in hand, the basis for the count is difficult to comprehend even in the context of the entire indictment. Reading it standing alone, as must be done for purposes of the defendant's motion to dismiss, is even more difficult. The Government's proposed construction of count 11 is not unreasonable, but neither is the defendant's. Consequently, count 11 cannot be said to unequivocally charge the defendant with making a false statement and, therefore, it lacks one of the elements essential to charge an offense under 18 U.S.C. § 1014.

*The defendant's motion to sever count 11*

In light of the dismissal of count 11, the defendant's motion to sever that count will be dismissed as moot.

*The defendant's discovery requests*

(a) The grand jury transcripts. The defendant's request for disclosure of all of the grand jury transcripts will be denied.

The defendant argues, based upon the alleged deficiencies in the indictment, that disclosure is essential to determine what evidence was in fact presented to the grand jury and upon what evidence it returned charges against the defendant. That argument is adequately disposed of by the Court's discussion and disposition of the defendant's motion to dismiss the now remaining counts, i. e., counts 1 through 4, of the indictment.

The defendant also suggests that the Government may have failed to present exculpatory evidence to the grand jury, that in fact it probably did not present such evidence because the only witnesses called before the grand jury were agents of the F.B.I., and that the Government may have presented hearsay evidence to the grand jury without properly advising it of its right to the presentation of nonhearsay testimony.

 An indictment is not improper because it is based on hearsay evidence, *Costello v. United States*, 350 U.S. 359, 361–364, 76 S.Ct. 406, 407–09, 100 L.Ed. 397 (1956); *United States v. Harris*, 521 F.2d 1089, 1091 (7th Cir. 1975), and, merely on the unsupported allegation of a defendant that the grand jury might not have returned an indictment had it heard eyewitness testimony, or might have been misled into believing that it was hearing eyewitness testimony, the Court is not permitted to engage itself or to permit the defendant to engage in a fishing expedition into the minutes of the grand jury. *United States v. Wilkinson*, 513 F.2d 227, 232–233 (7th Cir. 1975). As for the presentation of exculpatory evidence to the grand jury it is not required, and the failure to present it will not invalidate an otherwise valid indict-

ment. *In re Terranova*, 495 F.Supp. 837, 839 (E.D.Wis.1980).

 The secrecy of the grand jury proceedings are in general inviolate. 8 Moore's *Federal Practice* ¶ 6.05[1] and [3] (2d ed. 1981); *United States v. Johnson*, 319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546 (1943); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). The secrecy exception, which is a matter committed to the discretion of the district court, *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959), is designed to take care of the rare instances where the process itself is corrupted and a criminal defendant has a heavy burden of demonstrating through the presentation of fact rather than supposition that he has a particularized need for the grand jury transcripts in order to obtain them before trial. *United States v. English*, 501 F.2d 1254, 1257 (7th Cir. 1974), cert. denied 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 811; *United States v. Ball*, 49 F.R.D. 153, 157 (E.D.Wis.1969). The showing made by the defendant in this case is not sufficient. Therefore his request for disclosure must be denied.

(b) The checks, adjustment memos, scale tickets, bank documents and other documents on which the counts are based, including all bank statements and other documents from the Sharon State Bank and the Walworth State Bank, and any other bank, where defendant transacted business in the time period of the indictment.

The defendant states that the Government has promised to make available to him all the documents listed in his request which are in its possession or control (and it is ordered to gather those records and to make them available within thirty days), but that the Government also contends that it does not have and has never sought to obtain certain of the defendant's bank records which are preserved by the banks involved only on microfilm and which do not involve Standard Oil. The defendant also states that the Government intends to present its case in part through the use of

summary evidence and takes the position that the defendant's bank records not involving Standard Oil are not relevant to its case. Finally, the defendant contends that all of his bank records should be available so that the jury can be presented with a complete financial picture, that he does not himself have copies of the records, and that the Government should obtain the copies for him.

Although it is not entirely clear from the briefs or the affidavits submitted, it appears that the Government's summary witness has reviewed and will rely only on the defendant's bank records relating to Standard Oil, that the Government has or will obtain copies of all of those bank records, and that the Government will make copies of all of those records relating to Standard Oil available to the defendant, whether or not its summary witness in fact uses the records in preparing her summary exhibits. Thus the disputed bank records are the defendant's records during the relevant time period not related to Standard Oil.

The defendant also seeks an order requiring the Government to turn over to him all documents which were in his office at the time he was fired by Standard Oil and which Standard Oil has refused to return to him or to allow him to review.

■■■■ I see no objection to an order requiring the Government, as the defendant asks, to use its "best efforts" to obtain from Standard Oil all of the documents in its possession which came out of the defendant's former office. The Government has 30 days to try to obtain the records. Standard Oil is admittedly not a party to this suit and has no obligation to turn over any of its records to the defendant or to the Government except at trial pursuant to a valid subpoena. Since Standard Oil is cooperating with the Government in the preparation of the case and is making available to the Government for retention in the Government's files any records which Standard Oil has and which the Government wants, however, it is not unreasonable to treat the records as being within the Government's control at least to the extent

of requiring the Government to request the records on the defendant's behalf and to include them in its files for the defendant's review if Standard Oil agrees to make them available to the Government. The alternative course is to require the defendant to subpoena the records for production at trial and, at the time of production, to grant him a recess adequate to allow him to thoroughly review the records. I see no need for disruption of the trial in that manner when it appears that the records are, practically speaking, within the Government's control.

■■■■ As for the defendant's bank records not relating to Standard Oil, not in the Government's possession, and which are not within the category of records which the Government's summary witness reviewed in preparation for testifying, however, the Government and the defendant have equal access to the records and I am not persuaded even if because the defendant is proceeding in forma pauperis the Government ultimately will bear the cost of the "expenses reasonably incurred" by the defendant in obtaining the records, 18 U.S.C. § 30006A(d)(1), that the Government should bear the burden of obtaining the copies of the records. See Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure. The Government's position is that the records are irrelevant. Thus it is the defendant, if he believes to the contrary, who should make the determination of which, if any, of the records are in fact relevant and which should be obtained for his use at trial.

(c) Exculpatory evidence. The Government has agreed to produce all exculpatory evidence contained in its files for the defendant review. As previously stated, the parties do not agree as to whether all of the defendant's bank records would be exculpatory. The Government obligation to produce those records is discussed above and, since the bank records are not within the Government's control, is limited to the defendant's bank records involving Standard Oil.

(d) F.B.I. notes. The Government states that the F.B.I. agents involved in this case have kept and will continue to keep all of

their handwritten notes of interviews and that the notes will be made available to the defendant.

■ (e) A list of all witnesses and documents which the Government proposes to call or introduce at trial as evidence of similar acts pursuant to Rule 404(b) of the Federal Rules of Evidence.

The defendant contends that from the witnesses listed in the Government's pre-trial report, not all of whom will have evidence to give directly related to the offenses charged, it is obvious that the Government intends to introduce at trial evidence of similar acts committed by the defendant, and that some or all of such evidence may be inadmissible because the conduct involved may have occurred outside the statute of limitations; certain checks allegedly embezzled may have been in amounts less than $5,000, and, therefore, the embezzlement would not be criminal under 18 U.S.C. § 2314; certain of the checks may not have moved in interstate commerce and, therefore, the embezzlement would not be criminal under 18 U.S.C. § 2314; and the prejudice to the defendant of such evidence would outweigh its probative value. The defendant has moved in limine to exclude such evidence at trial and contends that as a predicate to briefing the motion in limine the Government should be required to provide to him an itemization of all such evidence which it intends to introduce, including in the itemization a list of acts, witnesses, and documents, to enable him to challenge the use of the evidence in an orderly and intelligent manner.

The admission of evidence is an evidentiary matter which can be dealt with at trial. The defendant has the Government's list of witnesses and the Government has stated that its summary charts and exhibits and the underlying documentary evidence will be made available to the defendant as soon as it is in the Government's possession. I am aware of the decisions in *United States v. Dolliole*, 597 F.2d 102 (7th Cir. 1979), cert. denied 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318; *United States v. Price*, 617 F.2d 455 (7th Cir. 1979); *United States v.*

*Miroff*, 606 F.2d 777 (7th Cir. 1979), cert. denied 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980); *United States v. O'Brien*, 618 F.2d 1234 (7th Cir. 1980); and *United States v. Berkwitt*, 619 F.2d 649 (7th Cir. 1980), all dealing with the admissibility of evidence under Rule 404, see 1981 *Chicago Kent Law Review*, V. 57, No. 1, at 191–195, and counsel can brief the relevant legal principles governing the admissibility of the prior acts evidence in light of the four objections which the defendant raises without prior itemization of the specific prior acts which the Government may try to introduce at trial. Consequently, the motion is denied.

On the other hand, the Court would appreciate it if the Government would agree to draw up and to provide to the defendant a list of the Rule 404(b) evidence, including names of witnesses, dates, and a summary of the testimony and any documentary evidence, which it plans to use in its case in chief as a method of saving time and expediting the trial. Otherwise, as with the records discussed above which are in the possession of Standard Oil, the defendant will be within his rights in interrupting the trial each time the Government attempts to introduce its Rule 404(b) evidence; the Court in equity will be obliged to allow sufficient time for consideration and argument of admissibility; and the resultant disruption of the trial could be substantial.

*The Government's motion for discovery and inspection*

■ The Government has moved pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure for an order requiring the defendant to disclose any books, papers, documents, photographs, tangible objects, or copies or portions thereof, within his possession or control and which he intends to offer as evidence in chief at trial, and to disclose any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case which are within his possession and control and which he intends to introduce as evidence in chief at trial or which were prepared by a witness whom he intends to call at trial.

The defendant does not object to the motion except that he contends that the Government has not yet, as the rule requires, complied with his requests for discovery made under Rule 16(a)(1)(C), and he states that "[w]hen or if this Court orders production by the government of the documents in the possession, presumably, of Standard Oil and the three banks previously discussed, then defendant will reveal document to the government." (Letter of defendant's counsel dated July 24, 1981, and received July 27, 1981, at page 3.)

I have previously held that within thirty days the Government must use its best efforts to obtain from Standard Oil the defendant's records which were left in his office at the time he was fired, but that the Government is not required to copy and produce the records from the defendant's banks not involving Standard Oil or which the Government does not intend to rely upon at trial and which were not considered or used by its summary witness.

■■■ I am not troubled by the fact that the bank records which the Government has not considered and upon which it does not intend to rely may in fact become available to the Government if the defendant decides to copy them and to use them at trial. Rule 16 contemplates that each party shall collect the documentary evidence which he intends to introduce as evidence in chief at trial and shall make such evidence available to the other side upon request. If the defendant intends to use certain documentary evidence and the Government does not, then it is the defendant's obligation to decide what evidence is relevant to his case and to obtain it.

## ORDER

For the foregoing reasons,

IT IS ORDERED that the defendant's motion to dismiss counts 1 through 11 of the indictment is granted as to counts 5 through 11, which are hereby dismissed, and is denied as to counts 1 through 4.

IT IS FURTHER ORDERED that the defendant's motion to sever count 11 is dismissed as moot.

IT IS FURTHER ORDERED that the defendant's motion to compel discovery is granted in part and denied in part; that the Government is ordered, as it has agreed to do, to preserve and make available to the defendant all handwritten notes taken by F.B.I. agents during interviews and to make available to the defendant all exculpatory evidence within its possession and control; that the Government is further ordered to use its best efforts within the next thirty days to obtain from Standard Oil all documents belonging to the defendant which were in his office at the time he was fired by Standard Oil and which he has been refused access to by Standard Oil; but that the Government is not required to copy and make available to the defendant any of the defendant's bank records which were not considered by its summary witness and upon which it does not otherwise intend to rely at trial; and that the Government is not required to provide to the defendant prior to trial an itemization of evidence of similar acts committed by the defendant which it intends to introduce at trial under Rule 404 of the Federal Rules of Evidence; but it would be helpful if it did so in order to allow for orderly briefing and disposition of the defendant's motion in limine.

IT IS FURTHER ORDERED that the Government's motion for discovery and inspection is granted and that the defendant is ordered to make available to the Government thirty days from today the items sought in the motion.

IT IS FURTHER ORDERED that within five days from today the Government serve and file a response to the defendant's motion for appointment and compensation of an investigator, and that the defendant serve and file any reply within five days of receipt of the Government's response.

IT IS FURTHER ORDERED that, if the defendant wishes to file any pretrial brief regarding his motions in limine on the use of Rule 404(b) evidence and on the use of summary charts and evidence, the brief shall be served and filed at least twenty days prior to the scheduled trial date. The

Government shall have ten days from receipt of any brief to serve and file a response.

IT IS FURTHER ORDERED that a pretrial conference is scheduled at 9:00 A.M. on Tuesday, November 10, 1981, in Room 471 of the Federal Building, Milwaukee, Wisconsin.

IT IS FURTHER ORDERED that a jury trial is scheduled at 9:30 A.M. on Monday, November 16, 1981, in Courtroom 425 of the Federal Building, Milwaukee, Wisconsin.