**IN RE: IN THE MATTER OF THE EXTRADITION OF MICHAEL JOHN DRAYER, Appellant.**

**No. 98–3595.**

United States Court of Appeals, Sixth Circuit.

Argued June 17, 1999

Decided Aug. 30, 1999

Gretchen A. Holderman (argued and briefed), Cleveland, OH; Nancy L. Kelley (argued and briefed), Office of the U.S. Attorney, Cleveland, OH, for Appellant.

Before: BOGGS, NORRIS, and BATCHELDER, Circuit Judges.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Michael John Drayer (a.k.a. John Frederick Johnson) filed a motion construed as a petition for a writ of habeas corpus, challenging his pending extradition to Can-

ada where he has been charged with a 1981 murder. He grounds his opposition to extradition on three factors: (1) denial by the district court of his request for discovery; (2) delay on the part of Canada in seeking his extradition; and (3) failure by the district court to enforce a cooperation agreement between him and Canadian authorities. For the reasons outlined below, we affirm the district court's denial of his petition.

### I.

This appeal stems from a complaint for extradition filed on May 23, 1996, by the United States on behalf of Canada. According to this complaint, a warrant for petitioner's arrest issued on May 18, 1982 for the 1981 murder of William Sederquest in Langley, British Columbia. It describes the circumstances of the crime, including the fact that two of petitioner's alleged codefendants have been convicted in Canada of first degree murder.[1] The United States and Canada are signatories to an extradition treaty; the extradition process that applies in cases such as this one is set out at 18 U.S.C. § 3184 (1994).

In response to the complaint for extradition, petitioner filed a motion for discovery, seeking "all information and documents within the possession, custody or control of the United States or police or prosecuting officials of Canada which may tend to show that the homicide of William Wilford Sederquest occurring on or about October 31, 1981, was not planned and deliberate." He also sought transcripts of the trial of his co-defendants and any information "which reflect[s] any statements or assurances made to [petitioner] and/or his attorney ... that Canada would not seek to extradite [petitioner] as a result of ... [his] cooperation at that time." He also filed a motion to dismiss the extradition complaint. Both motions were denied

---

1. In its review of their convictions, the Canadian Court of Appeals observed: "There were a number of people involved, primarily a Mr.

Drayer, who was not tried and is now in prison somewhere in the United States."

by the district court, which issued a certification of extraditability and order of commitment.

Petitioner then filed a motion to vacate pursuant to 28 U.S.C. § 2255 as a means of requiring the district court to revisit its rulings.[2] The district court opinion denying that motion forms the basis of this appeal.

At the time that the extradition complaint was filed, prisoner was (and still is) serving a sentence in Ohio for an unrelated murder. According to an affidavit filed by petitioner's former attorney, Corporal I.R. Williams of the Royal Canadian Mounted Police ("RCMP") visited petitioner in jail on February 12, 1982 while the latter awaited trial for murder in Trumbull County. The affidavit states that "in exchange for [petitioner's] cooperation with Canadian Officials in the [sic] prosecuting his co-defendants for the murder of William Sederquest, no further proceedings would be taken against him by Canada." Furthermore, "Williams represented and held himself out as a Canadian Official having full and complete authority to make promises, representations, and assurances on behalf of the Canadian Government."

Although the alleged cooperation agreement between petitioner and Canadian authorities was not reduced to writing, he apparently provided them with a sworn statement implicating his colleagues in the Sederquest murder.

For their part, the Canadians do not deny that Corporal Williams interviewed petitioner. In 1989, the RCMP contacted Ohio prison officials in order to lodge a detainer against petitioner, indicating that Canada would defer seeking extradition until "the time approaches closer to the expected parole review date." In response to that action, petitioner's former attorney wrote to the RCMP to remind it of what he asserted was a promise not to seek petitioner's extradition. The RCMP responded by letter that "[t]he assurance purported to have been given to [petitioner] would have no effect in law, due to a number of mitigating circumstances."

## II.

### 1. Cooperation Agreement

█ We turn first to petitioner's argument that the district court should have enforced the cooperation agreement that allegedly guaranteed petitioner that he would not be extradited if he assisted Canadian authorities. In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Court held that plea bargains are generally binding upon the government: "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, 404 U.S. at 262, 92 S.Ct. 495. This logic has been extended to immunity agreements, *see United States v. Fitch*, 964 F.2d 571, 574 (6th Cir.1992) (government bound by agreement unless it can show material breach by defendant), and to cooperation agreements, *United States v. Streebing*, 987 F.2d 368, 372 (6th Cir.1993) (cooperation agreements binding if government agent is authorized to make the agreement and defendant relies upon it to his detriment). Such agreements are analogous to contracts and thus reviewing courts are governed by "normal contract law standards." *Fitch*, 964 F.2d at 574 (internal punctuation and citation omitted). Furthermore, breach of an immunity agreement entered into by the United States with a defendant has been held sufficient reason to grant habeas relief in the face of a request for extradition. *See Plaster v. United States*, 720 F.2d 340, 350 (4th Cir.1983).

**2.** The district court properly noted that the appropriate habeas remedy was pursuant to 28 U.S.C. § 2241, not § 2255. *See Mainero v. Gregg*, 164 F.3d 1199, 1201–02 (9th Cir.1999) (noting that 28 U.S.C. § 2241 provides only means of appealing an extradition order).

■ Petitioner contends that his cooperation agreement represents just such a contract and that it was breached by Canadian authorities with the "willful" assistance of United States government officials. The district court rejected this argument by focusing upon the role of the United States:

> The enforceability of such agreements ... is subject to the condition that the participating government agent be authorized to make the promises contained in the agreement. This authority must be particularly clear as to promises regarding extradition:

>> [T]he extradition power, as it involves issues of foreign affairs, must be preserved within the Executive's discretion to the extent permitted by constitutional limitations. We thus conclude that the mere claim to such authority by a government official is insufficient to create apparent authority, and that defense counsel must be charged with that knowledge. Instead, the official must have some articulable indication that authority was delegated to him by the President or the Secretary of State.

*Plaster v. United States*, 720 F.2d 340, 354 (4th Cir.1983).

The purported agreement stems from Inspector Williams' alleged promise that Petitioner would not be subject to further proceedings in Canada if he cooperated. The record is devoid of evidence of involvement of a United States official, or that Inspector Williams was authorized to act on behalf of the United States. Petitioner argues the United States in effect "brokered" the agreement by permitting Inspector Williams to visit Petitioner in Trumbull County jail. Such alleged "involvement," indirect as it is, is not an "articulable indication" that any Trumbull County official received authority from the President or Secretary of State to make promises with respect to Petitioner's extradition. Memorandum Opinion at 4.

Petitioner makes the same argument to this court: first, that the Ohio Attorney General, through state prison officials, brokered the agreement by permitting Williams to interview petitioner; second, by lodging a warrant against him, these officials facilitated the breach of the agreement by the Canadians.

The weakness in petitioner's argument is his inability to show either that the United States was a party to the alleged cooperation agreement or that Williams acted under the authority of the United States. While Ohio governmental officials permitted Williams to visit petitioner in the county jail, there is nothing in the attorney's affidavit or elsewhere to indicate that they knew about the substance of the discussions between the two.[3] Simply filing a warrant or a complaint for extradition at the request of Canadian authorities does not make Ohio or the United States party to the cooperation agreement. Under the circumstances, it strikes us that the appropriate place to raise a defense based upon the cooperation agreement would be in any subsequent Canadian proceeding.

Because there is nothing to support a conclusion that the United States was party to, or in any way authorized the alleged cooperation agreement, its existence would not entitle petitioner to habeas relief.

### 2. Discovery Request

■ As mentioned at the outset of this opinion, petitioner challenges the district court's denial of his request for discovery. The resolution of this issue requires us to address, in view of this court's opinion in *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir.1993), the extent to which the holding of *Brady v. Maryland*, 373 U.S. 83, 83

---

**3.** While the affidavit states that Williams held himself out as having authority to make promises on behalf of the Canadian government, it is silent about any representations concerning authority delegated by the United States.

S.Ct. 1194, 10 L.Ed.2d 215 (1963), applies to discovery requests for exculpatory evidence made by the target of an extradition proceeding.

In *Demjanjuk*, we addressed the *Brady* issue in these terms:

> We believe *Brady* should be extended to cover denaturalization and extradition cases where the government seeks denaturalization or extradition based on proof of alleged criminal activities of the party proceeded against. If the government had sought to denaturalize Demjanjuk only on the basis of his misrepresentations at the time he sought admission to the United States and subsequently when he applied for citizenship, it would have been only a civil action. The government did not rest on those misrepresentations, however. Instead, the respondents presented their case as showing that Demjanjuk was guilty of mass murder.
>
> The OSI prosecutors knew that *Brady* requires disclosure of exculpatory information in criminal cases. The Director of OSI, Mr. Ryan, testified that it is "fundamentally unfair" not to follow the *Brady* principle in OSI cases and that he intended for the office to follow this principle of full disclosure of exculpatory material. (Ryan Tr. at 37.) It is not sufficient to say, as the Special Master concludes, that no prosecutorial misconduct occurred under the *Brady* principle because no particular individual at OSI has been proved to have acted in "bad faith" with the express intent of suppressing exculpatory evidence.
>
> In *Brady* itself, the Court stated that the failure to disclose material information is a due process violation "irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 86, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963).
>
> . . . .
>
> The consequences of denaturalization and extradition equal or exceed those of most criminal convictions. In this case,

Demjanjuk was extradited for trial on a charge that carried the death penalty. OSI is part of the Criminal Division of the Department of Justice. The OSI attorneys team with local United States Attorneys in seeking denaturalization and extradition, and they approach these cases as prosecutions. In fact, in correspondence and memoranda several of the respondents refer to their role in the Demjanjuk case as prosecutors. We believe the OSI attorneys had a constitutional duty to produce "all evidence favorable to an accused [Demjanjuk]," which the Special Master found he had requested and that was "material ... to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196.

> Thus, we hold that the OSI attorneys acted with reckless disregard for the truth and for the government's obligation to take no steps that prevent an adversary from presenting his case fully and fairly. This was fraud on the court in the circumstances of this case where, by recklessly assuming Demjanjuk's guilt, they failed to observe their obligation to produce exculpatory materials requested by Demjanjuk.

*Demjanjuk*, 10 F.3d at 353–54.

This seemingly broad language must be read in the context of a case that involved an unusual set of circumstances. Because those circumstances are not present in this case, petitioner is not entitled to the broad relief he seeks. Specifically, in *Demjanjuk*, the United States had conducted its own investigation of the offense underlying the request for extradition and uncovered exculpatory material in the course of that effort. *Id.* No such investigation occurred here; rather, the involvement of the United States can only be characterized as ministerial in the sense that it merely received factual information developed by Canadian authorities. Moreover, all documents received by the United States from

Canadian authorities were, in fact, turned over to counsel for petitioner.

 The scope of habeas review of an extradition action is highly constrained: "[H]abeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting a finding that there was reasonable ground to believe the accused guilty." *Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925); *see also Mainero v. Gregg*, 164 F.3d 1199, 1205 (9th Cir.1999) (same). Of the three permissible inquiries, the only question raised by this case is whether there was probable cause to believe petitioner committed the offense charged by the Canadians. In accordance with *Demjanjuk*, the United States was obliged to turn over any exculpatory materials in its possession that would undercut a finding that there was probable cause to believe that petitioner committed the murder with which Canada had charged him. This obligation does not apply to Canadian authorities, however. *See Austin v. Healey*, 5 F.3d 598, 605 (2d Cir.1993) (country requesting extradition has no obligation to try case in United States). Accordingly, to the extent that petitioner's motion for discovery included requests for materials in the possession or control of Canada, it was properly denied. The United States does not have any obligation or authority to obtain these materials on behalf of petitioner. An extradition proceeding is not a forum in which to established the guilt or innocence of the accused; rather, the sole inquiry is into probable cause.

The United States complied with its discovery obligations by turning over the materials in its possession to petitioner. Items that may be in the possession of Canada must be sought in a Canadian forum.

*3. Delay in Extradition*

██ Petitioner's final argument concerns the fourteen-year delay between the issuance of the Canadian arrest warrant and Canada's formal request for his extradition. This delay allegedly abridged his Fifth Amendment right to due process because, among other things, it deprived him of the opportunity to serve his Canadian and American murder sentences concurrently.

In support of his position, he cites a one-paragraph concurrence in an Eleventh Circuit case that states, "Although the combination of delay and other factors could entitle a United States citizen subject to extradition to a foreign country to due process protection, that right being superior to the government's treaty obligation, there are no facts present in this case to trigger that right." *Martin v. Warden*, 993 F.2d 824, 830 (11th Cir.1993) (concurrence). In *Martin*, the court upheld the extradition of the petitioner, a United States citizen, to Canada despite the fact that a seventeen-year delay separated his alleged crime from his extradition. In doing so, the panel explicitly held "there is no due process right to a speedy extradition." *Id.* at 825; *see also McMaster v. United States*, 9 F.3d 47, 48–49 (8th Cir. 1993) (no due process rights in extradition proceeding unless the United States bases extradition upon impermissible factors such as race, creed, sex or other exceptional constitutional limitations) (citing *In re Burt*, 737 F.2d 1477, 1487 (7th Cir.1984)); *Kamrin v. United States*, 725 F.2d 1225, 1227 (9th Cir.1984) (unless extradition treaty itself guarantees full United States rights to due process, they do not apply).

In short, petitioner cites no viable authority for the proposition that his due process rights were infringed by Canada's delay in seeking his extradition.

### III.

The judgment of the district court is **affirmed.**