WILSON, Circuit Judge,
dissenting.
The petitioners, Valenzuela and Repper, argue that the use of a DEA affidavit as evidence to support a finding of probable cause during the extradition proceeding violates their Fifth Amendment right against self-incrimination, as well as their due process rights. The majority holds that the DEA affidavit does not violate the petitioners’ Fifth Amendment right, but that the affidavit violates their due process right to a fundamentally fair hearing. I agree with the former holding, but not the latter. After reviewing the record and the testimony of DEA Agents Bruce and Duffy, Detective Tenety, and the petitioners to determine exactly what the immunity/cooperation agreement between the DEA *1231 and the petitioners entailed, I find no breach of the agreement, and thus, no due process violation. Therefore, I must respectfully dissent.
As we have held, the government must adhere to the terms of any plea bargain or immunity agreement that it makes in order to satisfy a defendant’s due process rights. United States v. Harvey, 869 F.2d 1439, 1443 (11th Cir.1989). The due process requirements surrounding immunity and cooperation agreements also apply during extradition proceedings. In re Extradition of Burt, 737 F.2d 1477, 1484 (7th Cir.1984). If the government breaches an immunity/cooperation agreement and violates the petitioner’s due process rights, courts have “sufficient reason to grant ha-beas relief in the face of a request for extradition.” In re Extradition of Drayer, 190 F.3d 410, 412 (6th Cir.1999). We must therefore determine whether the United States breached its immunity/coopeiation agreement with Repper and Valenzuela in order to determine whether their due process rights were violated.
The immunity/cooperation agreement in this case is comprised of both written and oral promises made by DEA Agent Bruce and Detective Tenety.[1] Repper apparently signed three DEA forms, the most important being the DEA Cooperating Individual Agreement, DEA Form-473, dated December 23, 1997, which reads as follows:[2]
The undersigned cooperating individual agrees to the following: I will not violate criminal laws in furtherance of gathering information or providing services to DEA, and any evidence of such a violation will be reported by DEA to the appropriate law enforcement agency. I have no official status, complied or otherwise, as agent or employee of DEA. That the information I provide may be used in a criminal proceeding, and I may be called upon to testify to such information in a court of law. And although DEA will use all lawful means to protect my confidentiality, this can not be guaranteed.
I am advised that this is a federal offense to threaten, harass or mislead anyone who provides information about a federal crime to a federal law enforcement agency. If I experience anything of this nature as a result of my cooperation with DEA I will contact my controlling agent immediately. I have read and understand the following regarding my conduct as a DEA cooperating individual. Signature.[3]
Repper also signed a payment for information/purchase of evidence form, which provided him with subsequent payments for his services.
*1232 None of the DEA forms Repper signed appear to grant Repper or Valenzuela any immunity from future prosecution by the United States. However, at the extradition hearing, both the DEA agents and the petitioners testified that a verbal agreement was made that the petitioners would be free from any United States prosecution if they provided the DEA with information regarding an international drug smuggling operation. Agent Bruce testified that during a meeting on December 17,1997, “[w]e basically told them that it is apparent you have committed crimes in other countries. Again, you have to understand that we cannot protect you from these crimes that you may have committed in these countries. We cannot give you immunity of any kind.”
On cross-examination, Agent Bruce testified that he and Detective Tenety told the petitioners on December 17th that they were not going to prosecute them in the United States — “We told them that we as DEA were not interested in prosecuting them in the United States. But we did tell them that they had to understand that based on what you have told us you have obviously committed crimes in other countries, and because of this we can’t protect you in any way from being arrested for these crimes.”
As to the government’s promise of confidentiality, the DEA Form-473 indicated that the agents were to use “all lawful means” to keep their identities confidential; however, the form notes that “this can not be guaranteed.” When asked what it meant when Valenzuela and Rep-per were told that their statements would be protected and kept confidential, DEA Agent Duffy explained that “[w]e protect the confidentiality of our sources to the best of our ability.”
Based on the agents’ and the petitioners’ testimony, Valenzuela and Repper clearly received immunity from United States prosecution. It is also equally clear that they did not receive promises of immunity from Italian prosecution — nor were they given assurances that they would be protected from the Italian authorities if the Italians wished to prosecute them in the future for crimes they had committed in Italy. The DEA could not protect them “in any way from being arrested for these crimes.” Thus, the government did not breach any immunity/cooperation agreement because the petitioners are not being prosecuted in the United States for any crimes committed here.
In addition, Valenzuela and Repper contend that the government breached the agreement by not keeping their identities and information confidential. However, it was made clear that this confidentiality was not absolute — the written agreement specifically provides that confidentiality cannot be guaranteed.
Certainly the information Valenzuela and Repper provided the DEA was not meant to be confidential because according to DEA Form-473, this information could be “used in a criminal proceeding,” and Valenzuela and/or Repper could “be called upon to testify to such information.” As to protecting their identities as confidential informants, the DEA office in West Palm Beach repeatedly provided the DEA office in Rome with information provided by the petitioners, yet the agents never disclosed their identities. Moreover, the fact that the Italian authorities initially presented a formal request for extradition without including any incriminating information the DEA might have had clearly suggests that the Italian authorities had no knowledge that the defendants were confidential informants of the DEA.[4] Thus, by keeping *1233 the petitioners’ identities confidential while Italy was requesting their extradition, the DEA agents fulfilled their obligation to protect the petitioners’ confidentiality to “the best of their ability.”
In conclusion, Italy is requesting extradition of Valenzuela and Repper for crimes they committed in Italy prior to becoming informants for the DEA. No law enforcement officer in the United States ever told the petitioners that they would not be held accountable for crimes they had previously committed in Italy. In fact, the record demonstrates that: (1) the DEA made no promises as to extradition (to the contrary, the DEA agents stated they could not protect them “in any way”); (2) the DEA never granted the petitioners any immunity from Italian prosecution; (3) the DEA never promised that the information the petitioners provided them would remain confidential (DEA Form-473 indicates that they may have to testify at a later date); and (4) the government only revealed the petitioners’ identities after the Italian authorities formally requested their extraditions and arrest warrants were issued. The DEA’s promise of confidentiality was not absolute; the petitioners were clearly aware that the DEA could not protect them from prosecution for crimes they had previously committed in Italy. Therefore, I find that the government did not breach its immunity/cooperation agreement, and as a result, the petitioners’ due process rights have not been violated. I would therefore affirm the district court’s order finding probable cause to extradite and deny the petitioners’ application for a writ of habeas corpus.

.We must rely on the DEA agents’, the petitioners’, and the detective’s testimony to determine what was promised under the alleged immunity/cooperation agreement. Informal grants of immunity are difficult to piece together. As we stated in Harvey, 869 F.2d at 1443:
[T]he magistrate and district court have been put through the arduous task of reconstructing the terms of the agreement with the government, a task made still more difficult by the astonishing failure of the DEA agents who interviewed [the petitioner] to keep any written records of those interviews. Informal grants of immunity are by their very nature less certain than formal grants, and thus are much more likely to create confusion for the government and for the courts in the future. As long as prosecutors continue the practice of unwritten grants of immunity, they open the door for subsequent litigation such as this, and for adverse decisions as well.

. According to Agent Bruce, although Valenzuela did not sign the agreement, the protections that were given to Repper were extended to her as well.

. DEA Form-473 is not found in the record; therefore, we must rely on Agent Bruce's reading of the form at the extradition hearing.

. In fact, according to the Government's Supplemental Response to Defendant Valenzuela’s Motion to Deny Extradition Request, the *1233 government filed under seal DEA Agent Bruce’s affidavit containing statements made by the petitioners to the DEA only after the petitioners themselves disclosed their status as confidential informants to the court.