**Rogelio MONTEMAYOR SEGUY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CIV.A. H–04–3014.

United States District Court, S.D. Texas.

Aug. 5, 2004.

Mike DeGeurin, Jr., Foreman Degeurin et al, Houston, TX, for Plaintiff.

Donald DeGabrielle, US Attorneys Office, Houston, TX, for Defendant.

Opinion on Petition for Writ
of Habeas Corpus

HUGHES, District Judge.

### 1. Introduction.

The former director of the national oil company of Mexico claims that his extradition should be vacated. He re-urges arguments he made at the extradition hearing, adding only a claim that the process used did not meet American constitutional standards for fair criminal prosecutions. His petition will be denied because his extradition is not constitutionally deficient.

### 2. Background.

On May 3, 2002, a court in Mexico City authorized the arrest of Rogelio Montemayor Seguy and five others. The charges covered seven transactions, but Montemayor was only implicated in three of them. The Mexican prosecutors brought charges against Montemayor that, with each of his transactions, he peculated and wrongfully used his governmental powers. The three transactions are each charged under both crimes, making six charges. See Art. 223, ¶ I, of the Mexican Federal Criminal Code; Art. 217, ¶ III, of the Mexican Federal Criminal Code. Typically, peculation would be called embezzlement here, and wrongful use is best described as diverting funds from the intended use or making an illegal payment. The United States of America, on behalf of the United Mexican States, sought extradition for those six charges.

After several lengthy conferences and considerable discovery, on July 20, 2004, this court held a hearing on the complaint for extradition. It heard arguments, examined the evidence, and allowed Montemayor to testify and to introduce exhibits. Based on the evidence, it certified Montemayor's extradition to stand trial in Mexico for three counts of peculation and three counts of wrongful use of powers based on the three transactions specified in the Mexican government's arrest warrant.

The order also gave Montemayor a short time to petition for a writ of habeas corpus. He did.

### 3. Claims.

Montemayor's petition is based almost entirely on arguments made during the extradition. To recap, he claims that:

- The statute governing extradition is unconstitutional.
- American laws are not analogous to peculation and diversion.

- Peculation and diversion cannot be based on the same conduct.
- The charges are too vague.
- The evidence does not establish probable cause to believe that he committed peculation and diversion.

Further, he claims that his procedural rights were violated because the United States proffered fraudulent evidence and the Mexican government refused to comply with his discovery requests.

### 4. *Standard.*

 Although this court has authority to hear habeas petitions in the context of extraditions, its scope of review is restricted. *See* 28 U.S.C. § 2241(c)(3). The review is limited to (a) whether the court that heard the extradition had jurisdiction, (b) whether the offenses are within the extradition treaty, and (c) whether there is *"any evidence"* to support a finding of probable cause to believe the accused committed the crimes. *See Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925) (Holmes, J.). If one of these elements is missing, the extradition would be constitutionally irregular. These would be gross omissions. Further, this is not an appeal; it is an extraordinary remedy used in special circumstances. *See Hensley v. Mun. Ct.,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). Most of the discussion about potential expansion of the grounds for a habeas writ actually turns on defects that would undermine one of those elements, and the great writ's function historically has been to attack flagrantly irregular process. *See* 3 William Blackstone, *Commentaries on the Laws of England* 131 (William Draper Lewis ed 1902); *In re Burt,* 737 F.2d 1477 (7th Cir.1984). Despite its being the only route to a review, the writ is not an ordinary rehearing nor an appeal by right. *See Fernandez,* 268 U.S. at 312, 45 S.Ct. 541.

### 5. *Resistance Redux.*

In essence, Montemayor's petition is a plea to reconsider this court's decision to issue the certificate for extradition. This court's opinion on extradition dealt with all of these arguments. Montemayor's petition offers no new evidence nor a new legal theory. At best, he merely recasts his already rejected claims, making them into what would ordinarily be points on appeal.

Although the decision on extradition stands on its own, a brief re-examination of some of Montemayor's contentions will be sufficient · to remove any doubt that his extradition will be the result of regular process. The process has been agreeable to the Constitution, extradition treaty, and laws of the United States and Mexico. *See* Extradition Treaty between United States and Mexico, May 4, 1978, U.S.-Mex., 31 U.S.T. 5059; 18 U.S.C. § 3184.

### 6. *Dual Criminality.*

 Montemayor claims that the United States did not offer specific American crimes that are analogous to peculation or wrongful use of powers. The federal laws cited by the this court are sufficiently similar—compellingly parallel—to the Mexican charges of embezzlement and diversion. *See* 18 U.S.C. §§ 641, 653. Montemayor seems to want an exact replica of the Mexican laws in the federal criminal code. No matter his preference, the law only requires that the crimes be substantially the same. They are. *See Theron v. United States Marshal,* 832 F.2d 492, 496 (9th Cir.1987). In America, it is illegal for a government official to steal from the government or use government funds for a use other than the authorized one.

He also claims that this court intertwined the elements of the two crimes in

order to satisfy the dual criminality requirement. His argument is based on a distorted reading of the extradition opinion. The opinion is clear, although it does for simplicity use shorthand references to the Mexican statute's concepts. Also, when the court paraphrased the translations of the Mexican code from the Spanish, it used words that appear in one or the other statute. By selective quotation Montemayor can generate the illusion of confusion. Beyond the word play, he points to no element that is included or omitted in error. The descriptions, fairly read, are accurate.

Montemayor is accused of stealing from the Mexican government in two ways. First, he is accused of peculation; that is taking from the government without authority. Second, he is accused of abusing his authority by misapplying funds and making illegal payments. The opinion includes the Mexican statutes verbatim as well as their restatement. For clarity, it referred to peculation as "embezzlement" and wrongful use of powers as "diversion."

The American statutes cited cover the crimes alleged by the Mexican government. The opinion sufficiently explains why it is criminal for a public official to embezzle and divert government funds for his—or another's—benefit in America and Mexico. Both statues in both countries could be reasonably said to cover the same conduct in many cases; that brings us to his argument that, because that is true, he cannot be charged with both for the same conduct.

7. *Exclusivity.*

█Montemayor again complains that he cannot be tried for embezzlement and diversion on the same set of facts. He continues to mistake this court's role in an extradition. While it may be impossible for him to be *convicted* for both on these facts, based on the evidence it is legally permissible to *charge* him with both crimes. The United States did not ask this court to choose the crime with the better inculpatory evidence. This court's role is to determine whether there is probable cause to believe he committed *either* crime. Because there is, the prosecutors in Mexico may have the opportunity to elect one of the crimes to prosecute. Moreover, Montemayor continually brings up a Mexican court's holding that the crimes are mutually exclusive. While the decision may be reasonable, it is not one for this court. Parenthetically, based on his own proffers of what the Mexican judicial process has done, he has shown that he would get a full and fair hearing on this issue in Mexico.

8. *Probable Cause.*

█ Montemayor complains that this court did not specify each datum of evidence that supported its finding of probable cause that he committed the crimes. Like many courts, Montemayor mistakes the findings and the record. The function of the opinion is to appraise the record, not duplicate it. Obviously, the findings were based on a voluminous and complete record. The record is available to support the judgment. Further, the opinion was illustrative, not exhaustive. It highlighted especially incriminating evidence and weaknesses in Montemayor's defense. The law only requires this court to find probable cause generally, not to arrange the record by the elements of the crimes. *See* 18 U.S.C. § 3184; *Quinn v. Robinson,* 783 F.2d 776 (9th Cir.1986).

█ In addition, Montemayor argues that United States did not prove that he intended to commit the crimes. Again, his extradition hearing was not a trial. Like the other elements of the crimes, the United States only had to show probable cause

that Montemayor intended to steal and divert funds of the Mexican government. Based on the evidence, it is reasonable to believe that he wanted to use—and used—the money for improper purposes. He negotiated and authorized the transactions. Moreover, his nonchalance over where the incredible sums of money that he gave the Union went and what it was used for raises questions about the legitimacy of the transactions. It is probable that a fully-informed, disinterested person could conclude that the facts allowed an inference of criminal intent beyond a reasonable doubt.

### 9. Fraud.

■ Montemayor claims that the Mexican government gave the United States forged documents to help with its extradition request. Assuming they were forgeries, it is not grounds for vacating the extradition certificate.

First, there was no "fraud on the court" because the competing versions of the two documents were admitted into evidence. See Demjanjuk v. Petrovsky, 10 F.3d 338, 356 (6th Cir.1994). Multiple variations of the same document create an issue of fact that is ripe for a judge in Mexico to decide.

Second, even if the documents were forgeries, there is a sufficient amount of additional evidence to support a finding of probable cause to believe that he committed the crimes. See Magisano v. Locke, 545 F.2d 1228, 1230 (9th Cir.1976).

### 10. Exculpatory Evidence.

■ Montemayor contends that the Mexican government has not given him all of the potentially exculpatory evidence it has. Montemayor is not entitled to the exculpatory evidence at this stage.

■ In an extradition, this court performed the function of a grand jury or a magistrate in a preliminary hearing. See

Escobedo v. United States, 623 F.2d 1098, 1102 n. 5 (5th Cir.1980). It analyzed the government's complaint and evidence to determine whether it is reasonable to believe that Montemayor committed the crimes. As with those analogous proceedings, Montemayor is not entitled to exculpatory evidence yet. See United States v. Kilroy, 523 F.Supp. 206, 214 (E.D.Wis. 1981). To require those disclosures now would turn an extradition hearing into a full trial.

■ Montemayor argues that a defendant's constitutional right to exculpatory evidence applies to extradition hearings. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Regular process does not require that exculpatory disclosures be made at a hearing on extradition. First, an extradition is not a criminal prosecution. See Fed.R.Crim.P. 54(b)(5); Fed.R.Evid. 1101(d)(3). Second, the Constitution only ensures a fair process. See United States v. Higgs, 713 F.2d 39, 43 (3d Cir.1983). In criminal proceedings, there are restrictions and peculiarities at each stage. The process—taken as a whole—must comport with the Constitution, but constitutional necessities at one level are not necessarily required at other levels.

■ The extradition of Montemayor is an initial step in the prosecution of the charges against him in Mexico. The potential trial will occur in Mexico, leaving pretrial discovery issues for the Mexican courts to decide. See In re the Extradition of Singh, 123 F.R.D. 108, 112–113 (D.N.J.1987). The extradition law, the extradition treaty, and the United States Constitution do not require production of exculpatory evidence at an extradition hearing.

Montemayor mentions the extradition of John Demjanjuk who was an immigrant to

America who was accused of being the infamous Nazi officer "Ivan the Terrible." He says that the Constitution requires the United States to give the accused all of its exculpatory evidence before the hearing. *See Demjanjuk,* 10 F.3d at 353. To put it mildly, the facts and process of the case are exceptional.

At the initial hearing or on habeas review, the district judge did not ascertain that the government had not disclosed all the documents as he had ordered. Independent habeas review by the court of appeals also failed to catch the government's failure. Demjanjuk was extradited, and then he was acquitted through the competence of the foreign tribunal. Strangely, after it was all over, that court of appeals reopened the case on its own motion, appointed a special master, took evidence, and decided to vacate the extradition because the American prosecutors had defrauded the court by not disclosing exculpatory evidence.

That case is meaningless. It decided nothing; it had no parties and no justiciable issue. Demjanjuk had been extradited, tried, and acquitted.

Even if it had been a genuine "case or controversy," the situations of the defendants and prosecutors was entirely distinct. The exculpatory evidence for Demjanjuk was discovered by the United States from its own investigation. The government promised to give Demjanjuk all of its evidence, and it dishonestly did not. Also, the after-the-fact decision about Demjanjuk is not parallel because Montemayor specifically disclaimed any corrupt activity by the American prosecuting attorney. The United States did not lie in this case.

Ordinarily, as here, the role of the United States attorney was essentially administrative. He did not independently investigate Pemex's finances. He did review the charges that Mexico had included in its request for extradition. After that review, he declined to ask the court to approve some of the charges. That examination was a benefit to Montemayor and was based on the contents of Mexico's application.

He merely offered evidence that he received from the Mexican government. Even if he was constitutionally required to give Montemayor all of the exculpatory evidence *in his possession,* those requirements do not extend to the Mexican government. *See In re Extradition of Drayer,* 190 F.3d 410 (6th Cir.1999); *Austin v. Healey,* 5 F.3d 598, 605 (2d Cir.1993); *Quinn v. Robinson,* 783 F.2d 776 (9th Cir. 1986).

Further, the United States does not have a duty to collect all of the evidence from Mexico. *See In re Extradition of Drayer,* 190 F.3d at 415. It is only a conduit for the Mexican government. If, as a matter of executive judgment, the United States wants to ask for more information, it may. It had no duty other than to present the charges on which, in its discretion, it chose to assist the other nation. Presenting the charges and the information from abroad about them is its task.

In addition, the only exculpatory evidence in the record that Montemayor has mentioned is not exculpatory at all. The first, the "forged" schedule of accounts, does not prove his innocence. Together with the other version, the document only at best creates a fact issue.

The second, an internal memorandum about Union dues, is not exculpatory for the same reasons. The competing versions are not a defense to Montemayor's extradition; it is another fact issue. Further, the version he offers as the original does not prove that there were enough

Union dues to secure the loans from Pemex.

 Even if the "forged" documents infer that the Mexican government wanted to prosecute Montemayor for illegitimate reasons, the other evidence offered at the extradition hearing was enough to extradite him on the six charges. Moreover, the motivation of the prosecutors is not a defense to extradition; it is merely a defense at his trial. *See Escobedo,* 623 F.2d at 1104.

Also, Montemayor complains about other potentially exculpatory documents not in the record and the Mexican government's refusal to comply with his discovery requests. He had almost eight months to collect information relevant to his extradition. This court put off scheduling his hearing to facilitate his discovery. The extradition treaty, extradition law, and the Constitution do not require an extensive discovery. In light of the restrictions on Montemayor's ability to offer evidence and refute the allegations under the law of extradition, he had sufficient time and material to respond to the complaint. Although the filing of charges may have surprised Montemayor, he is familiar with the evidence. As the former head of Pemex, he had knowledge of the transactions in question and had extensive recollection of the related materials. In fact, he was comfortable enough in his knowledge to testify at the hearing. The hearing was fair and conformed with the constitutional safeguards available to Montemayor.

11. *Conclusion.*

This court had jurisdiction to hear the complaint to extradite Montemayor on three charges of embezzlement and three charges of diversion. The crimes are covered by the extradition treaty between Mexico and the United States, and there is ample evidence to support a finding of probable cause to believe Montemayor committed the crimes. His petition will be denied.

### Final Judgment

Rogelio Montemayor Seguy's petition for a writ of habeas corpus is denied. [7]